# Frank W. Smith *v.* Spencer Ervin and Edward D. Toland, Trading as Ervin & Toland, Appellants.

*Partnership—Special partnership—Notice—Dissolution.*

Where a special partner in a limited partnership formed under the act of March 21, 1836, P. L. 143, gives the notice required by the partnership articles of his intention to withdraw his capital from the firm at a certain time, but afterwards consents to withdraw it gradually, and the firm is not dissolved, he is entitled to participate in profits earned up to the actual dissolution of the partnership following a notice given by one of the other partners.

Smith was a special partner with Ervin and Toland. The partnership articles provided that one partner might dissolve by giving three months' notice to the others before the expiration of any calendar year. In October, 1890, Smith gave three months' notice of his intention to withdraw from the firm. Subsequently he agreed to take out $10,000, and to withdraw the rest of his capital gradually. On Jan. 9, 1891, he received $10,000, and signed the following receipt. "Received from Ervin & Toland ten thousand dollars on account of my capital, the balance of my interest to be settled as soon as possible, when certain accounts that show a shrinkage are closed out, I agreeing to pro-rate equally with Spencer Ervin and Edward D. Toland, my partners, if any loss is sustained in so closing these outstanding accounts." Smith claimed that, notwithstanding the receipt, the partnership still continued. On Sept. 26, 1891, Toland notified Smith in writing that he intended to withdraw from the firm on Jan. 1, 1892. When Toland was on the witness stand he testified as to the notice given by Smith in 1890. He was then asked this question: Q. "But you continued it for another year by agreement of all the parties? A. Yes, with the understanding with Mr. Smith that his capital should be liquidated as fast as possible, commencing with $10,000, January 9th." *Held*, that the evidence was sufficient to sustain Smith's claim that the partnership continued until Jan. 1, 1892.

Argued March 28, 1895. Appeal, No. 93, Jan. T., 1895, by defendants, from decree of C. P. No. 4, Phila. Co., Sept. T., 1892, No. 951, sustaining exceptions to referee's report. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

WILLIAMS and MITCHELL, JJ., dissent.

Bill in equity by a partner against his copartners for an account.

The case was referred to J. Levering Jones, Esq., as referee, under the following agreement:

" That the said parties hereto refer the question of the amount due Frank W. Smith as aforesaid to J. Levering Jones as referee to take testimony, and make a report as to the law and the facts. Such report to have the same force and effect as if a bill in equity had been filed by one of the partners for a settle- ment of partnership accounts, and had been duly prosecuted to issue, and the said J. Levering Jones had been appointed ex- aminer and master therein. The report of said referee to be final, unless either party within thirty days after receiving notice of such report shall file a bill in equity for the determi- nation of the question in dispute, in which case this agreement may be filed by either party in said suit, and shall have the same force and effect therein as if the case had been prose- cuted to issue, and the said report of the referee was a master's report therein."

The facts of the case are fully stated in the opinion of the Supreme Court.

The referee found in favor of defendants. The court, in an opinion by THAYER, P. J., sustained exceptions to referee's re- port, and entered a decree in favor of plaintiff.

*Error assigned* among others was decree in favor of plaintiff.

*J. Bayard Henry* and *Richard C. Dale*, for appellants.

*John G. Johnson, Frank P. Prichard* with him, for appellee.

OPINION BY MR. JUSTICE DEAN, May 20, 1895 :

On the 13th of January, 1890, Smith, Ervin and Toland, in firm name of Ervin & Toland, formed a limited partnership as stock brokers, under act of 21st March, 1836, and supplements ; the place of business was Philadelphia. Ervin and Toland were general partners, and Smith special. Capital $166,000. Of this, $116,000 was to be contributed by the general partners, and $50,000 by the special partner. The term of partnership was three years, but it was provided that it might be dissolved by any one of the partners giving three months' notice in writ- ing to his copartners of his desire to dissolve at the end of the year. All were to be paid six per cent interest semi-annually, on the capital respectively contributed by them. After

payment of all expenses in carrying on the business, and interest to each partner on the capital contributed by him, the special partner, Smith, was to receive ten per cent of the annual profits, and Ervin & Toland, the general partners, were to have the balance equally; this balance to be ascertained and divided at the end of each year. In addition, each of the general partners had the right to draw each month a sum not exceeding $500 for his personal expenses; this, however, to be charged to their personal accounts.

At the date of the formation of the partnership, the special partner, this plaintiff, paid in $30,000, and within a few months afterwards $16,464, leaving a deficiency in his stipulated contribution, $50,000, of $3,536. During the first year of the business, Ervin & Toland organized the "Reading Syndicate," and undertook to carry on margin for customers, about two hundred thousand shares of Reading Railroad stock; they also took a partnership interest in about seven thousand additional shares of the same stock. In October of the same year, while the partnership was thus involved, Mr. Smith notified the general partners of his intention to withdraw his capital. Sometime after this, the general partners informed him of the condition of the firm's business; that the securities they were carrying had fallen greatly in the market, and the withdrawal of his capital meant heavy loss to all, and insolvency for the partnership. The conferences ran along until the close of the year. The books then showed a net loss of over $37,000. As a result of a thorough examination of the business by Mr. Smith, it was agreed between them that he should be paid ten thousand dollars at once; for this he gave his receipt, thus:

"PHILADELPHIA, Jan. 9th, 1891.

"Received from Ervin & Toland ten thousand dollars on account of my capital, the balance of my interest to be settled as soon as possible, when certain accounts that show a shrinkage are closed out, I agreeing to pro-rate equally with Spencer Ervin and Edward D. Toland, my partners, if any loss is sustained in so closing these outstanding accounts.

"FRANK W. SMITH."

Besides this $10,000, there was paid Smith during the year 1891 $8,000 more. The Reading stock steadily declined, and

that owned by the partnership in June, 1891, showed a net loss of $72,000. In that month it began to go up, and the stock was gradually sold on the advancing market until the last of it was closed out November 9th following. The net loss on this, and some other securities of less amount, footed up $21,942.89.

Mr. Smith then received a statement from the firm of the business of 1891, taking as a basis the results of 1890, of which he had knowledge by personal examination of the books, and which year showed a net loss, according to trial balance, of over $37,000. In this statement he was allowed, for the year 1891, interest at six per cent on $30,000, this sum being estimated as the average amount of his capital in the business for that year ; at the same time he was charged with one third the losses on the business of 1890, and credited with ten per cent of the profits of 1891. To this, Mr. Smith made objections ; he claimed the business for both years should be considered together, and after allowing to each partner interest on the capital contributed by him, he, as special partner under the partnership agreement of 13th of January, 1890, should be awarded ten per cent of the aggregate profit, as shown at the end of the year 1891. He averred, he had a right to be treated as a partner for the full two years, because there had been no dissolution until January 1st, 1892, when the partnership ended by the formal withdrawal in writing of Mr. Toland. Ervin & Toland alleged the partnership was dissolved on Jan 1, 1891, Mr. Smith having given them notice in October previous of his intention to withdraw, and having actually drawn out thereafter his capital, as fast as a prudent consideration for all their interests warranted.

If the relation of Mr. Smith as partner ended 1st January, 1891, as Ervin & Toland claim, then he gets back the actual capital paid in by him, and about $1,000 more ; Ervin & Toland get in profits something over $11,000 each. If there was no dissolution of the partnership until 1st January, 1892, then Mr. Smith gets $5,120 more than Ervin & Toland now admit is his due.

The issue raised is as to the date of dissolution of the partnership, and is purely one of fact ; the statement of the account and balance due Smith are determined as we determine that fact.

By agreement of the parties, the whole matter was referred to J. Levering Jones, Esq., to take testimony and make report as to law and the facts, as if a bill in equity for account had been filed. The referee took the testimony, and made a very clear and concise report on the facts. He says :

" The primary question to be considered in this cause is, when did the partnership, made on January 13, 1890, between Spencer Ervin and Edward D. Toland, as general partners, and Frank W. Smith, as special partner, terminate?" He answers, on 1st of January, 1891, and states the account and suggests decree accordingly.

His finding of fact was not approved by the learned judge of the court of common pleas, who, nevertheless, agrees with the referee that "the dispute in the case arises over the question, when was the firm dissolved as regards Mr. Smith?" He then draws the very opposite conclusion from the same evidence on which the referee based his conclusions. His opinion is, that the partnership terminated at the end of the year 1891, instead of at the beginning of it, and he directs the account to be stated accordingly. This leaves to us the duty of determining between them.

At the outstart, it may be conceded the case is a close one on the evidence, and if the referee and court had been in accord, under our well settled rule not to disturb the findings of facts in the court below, unless for manifest error, a decree for either party would probably have been sustained.

There are two leading significant facts ; one is wholly inconsistent with the claim now set up by plaintiff, the other with that now set up by defendants.

The receipt for $10,000, signed January 9, 1891, by Smith, is, on its face, susceptible of no reasonable interpretation other than, at that date, by his request and by consent of the others the partnership had terminated; and that he, according to the language of the writing itself, had the right to withdraw all the money he had paid in "as soon as possible, when certain accounts that show a shrinkage are closed out."

The claim of Smith now, that his relation as partner was not severed until nearly twelve months afterwards, is flatly contradicted by this writing.

Then, on the other hand, the act of Toland, on 26th of Sep-

tember, 1891, is an unequivocal assertion that Smith, nine
months afterwards, was still a partner, and would so continue
until Jan. 1, 1892.   On a paper headed with the names of Ervin
and Toland as general, and Smith as special partner, dated
Sept. 26, 1891, he serves this notice on Smith : " Dear Mr.
Smith,—This is a formal notice, that I intend to withdraw from
the firm of Ervin & Toland on January 1st, 1892.   Yours
sincerely, Edward D. Toland."

If Smith had ceased to be a partner, as Toland now claims,
nine months before, at the end of the year 1890, judging of the
usual operations of men's minds and their conduct in business
affairs, there is no reasonable theory which will account for
this contradictory act.   It is consistent, and only consistent,
with the idea that Toland believed Smith to be still a partner,
and acting in accordance with stipulation 6, in the partnership
articles, desired to terminate the partnership on 1st January,
1892.   That stipulation reads thus : " The partnership shall
continue for a period of three years from the 12th of January,
1890.   Provided, however, that any one partner, whether gen-
eral or special, may dissolve the said partnership, by giving his
copartners three months' written notice before the expiration
of any calendar year, of his desire to terminate the same at the
end of that year."

That is, the partnership still existed ; Mr. Toland desired to
end it ; he could only do so in the way provided in that agree-
ment ; he adopted that very way.   On this supposition, only, is
this conduct explicable.   The explanation given by Mr. Toland,
in his testimony, is this : " I simply gave Mr. Smith this notice,
as during that period there were certain accounts which were
in process of liquidation, in which we were all interested, and
this was simply notice to him that I intended to retire from busi-
ness on 1st of January, 1892."   If the act had been equivocal,
this explanation would have helped but little in ascertaining its
true import ; but being manifestly significant of a continuing
partnership, the explanation is wholly unsatisfactory.   It is
within common observation, that a cautious, intelligent business
man, not seldom neglects those formalities which are indispensa-
ble proof of important transactions ; but it is a rare case that
such a man will take pains to formally assert a fact which does
not exist, a fact, too, highly prejudicial to his own interests.   In

effect, this conduct of Toland's was an assertion that Smith was still a partner, and therefore entitled to receive $5,120 more money than Toland now admits was due him.

But Toland's conduct is not more significant of the continuance of the partnership to January 1st, 1892, than Smith's receipt, that it had determined in January, 1891; nor is Smith's explanation of that paper any more satisfactory. He says: "My partners represented to me that if I staid in the firm, and the firm was allowed to go quietly on without disruption, we would undoubtedly, by virtue of new customers and new business which we had acquired, make up our loss, and most likely enjoy a good profit besides during the coming year. . . . I said, if it seems impossible to do any business, and things do not get any better, and there is no business and no money, I will stand by you if I have to stand these losses equally; then they gave me this paper, and I carelessly signed it with that understanding, that the loss that I agreed to stand pro rata with them was a loss that was to be made up, if possible, by a continuation or extension of the partnership which I then had a right to dissolve."

The substance of the explanation is, that, wishing to terminate the partnership, and having the right to terminate it, he consented to its continuance, and then accepted a written agreement which expressed the very opposite. Agreements are presumed to express the assent of two minds to the same thing; this one, according to Smith's explanation, plainly expressed that to which neither assented.

In considering this vague and unsatisfactory explanation, however, we are not without some help from Mr. Toland. This interrogatory is put to him: " Q. I understand, then, that there was a partnership in 1890, which Mr. Smith, giving notice in the latter part of the year, desired terminated? A. Yes, sir. Q. But you continued it for another year by agreement of all the parties? A. Yes, with the understanding with Mr. Smith that his capital could be liquidated as fast as possible, commencing with $10,000, January 9th." Then, further on, this question is put: " Q. In point of fact, the firm of Ervin & Toland, formed under that written agreement of 1890, was not dissolved until December, 1891? A. Well, I don't know about that."

Smith's explanation of his receipt is, that it expressed the

very opposite of what was agreed upon ; Toland almost posi-tively corroborates him in some parts of his testimony, and in no part of it contradicts him.   Then taking the two statements, in connection with the unequivocal conduct of Toland nine months afterwards, in treating Smith as a partner by giving notice of his intention to terminate the partnership, we are moved, not without some hesitation, to adopt the conclusion of the learned judge of the court below, that, taking all the evi-dence together, it shows there was no dissolution of partnership until Jan. 1, 1892.   The decree is therefore affirmed, and the appeal is dismissed at costs of appellants.

WILLIAMS and MITCHELL, JJ., dissent.

MR. JUSTICE MITCHELL, dissenting.

The matters which led to this controversy having occurred between partners who were on entirely friendly terms, were unfortunately not carried on with the formality and precision desirable in business transactions, and it is not therefore surpris-ing that the parties failed to have the same understanding at the time, and their recollections now differ.  But with the writ-ten documents as a basis I am of opinion that the substantial agreement is clear.   Mr. Smith desired to dissolve the partner-ship, and had the legal right to do so, but became convinced that it would involve very serious loss not only to his partners but to himself to do so at that time.   He therefore agreed that no public change should be made, but as between the partners themselves the notice was not withdrawn and liquidation com-menced at the beginning of the year 1891.   The receipt shows this beyond all doubt.   Smith received $10,000 of his capital and the rest was to be repaid "as soon as possible when certain accounts that show a shrinkage are closed out."   The losses on these special accounts were to be equally divided, but it is no-where said or indicated that general losses, or any losses at all on new business were to be paid in part or in whole by Smith. The business of 1891 was a new business on a new basis, and so far as the partners themselves were concerned, if it had proved a losing one Smith could not have been charged with any share of the losses, and on the other hand he had no claim for any of the profits.

1895.]                    Dissenting Opinion.

I do not see the difficulty that my brethren find in regard to the notice by Mr. Toland to Mr. Smith in September, 1891. The firm of Ervin & Toland continued during 1891 so far as the public were concerned. The use of the firm heading and paper was therefore not only natural but imperative. A change would have given notice to the public of what the circumstances required should not be known. And as to the partners themselves the firm still continued under the same name so far as Mr. Ervin and Mr. Toland were concerned. It was this latter firm from which Toland desired to withdraw, and his doing so involved the winding up of the business to the public eye as well as in fact between the partners, and therefore the termination of the temporary arrangement which had run through the year 1891. In this arrangement Smith of course was interested and he was entitled to notice of its intended termination. The letter of Toland to Smith was therefore not only a courteous and friendly but a proper business act.

I would reverse this judgment and. approve the findings of the referee.

WILLIAMS, J., concurs in this dissent.